

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7284 | **DATE** | August 22, 2002 |
| **CASE TITLE** | *Lonnie Biggs vs. United Airlines, Inc.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court grants defendant's motion for summary judgment [11-1]; grants as agreed defendant's motion *in limine* [16-1]; denies defendant's motion *in limine* [15-1]; and denies as moot defendant's motion *in limine* [17-1]. Final judgment in this case is entered in favor of defendant United Airlines, Inc., and against plaintiff Lonnie Biggs. No motions for reconsideration will be entertained.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | AUG 2 3 2002 | | |
| | Notified counsel by telephone. | | | date docketed | | 33 |
| ✓ | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | date mailed notice | | |
| CW | courtroom deputy's initials | 02 AUG 22 PM 4: 23 | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | | |



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AUG 2 3 2002

| | | |
|---|---|---|
| LONNIE BIGGS, | ) | |
| | ) | AUG 2 3 2002 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No: 01 C 7284** |
| | ) | |
| UNITED AIRLINES, INC., | ) | **Judge James H. Alesia** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) defendant's motions *in limine* and (2) defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court: (1) grants in part and denies in part defendant's motions *in limine* and (2) grants defendant's motion for summary judgment on all counts.

## I. BACKGROUND[1]

Plaintiff Lonnie Biggs ("Biggs") brings this suit against defendant United Airlines, Inc. ("United"), claiming that United discriminated against him in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"). In order to understand the court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in five parts. Part A describes Biggs's stroke, his subsequent return

---

[1] Unless otherwise indicated, the followings facts – taken from the parties' Local Rule 56.1 statements – are undisputed.

33

to work, and his supervisory structure. Part B outlines United's job description for a lead ramp serviceman. Part C discusses United's decision to place Biggs on sick leave. Part D describes the decision to allow Biggs to return to work. Part E explains the current lawsuit.

## A.    Biggs's Stroke, his Return to Work, and his Supervisory Structure

Biggs is a fifty-nine year old male who was born on July 23, 1943. He has worked at United for thirty-three years, and, in 1997, was working as a lead ramp serviceman. On or around August 8, 1997, Biggs suffered a stroke, as a result of which he suffers from permanent paralysis of his right hand. Due to the stroke, Biggs was off work and on paid sick leave until February 2, 1998. After a period of limited duty, Biggs returned to regular duty as a lead ramp serviceman in the relief area on February 9, 1998.

During the period of time at issue in this case, Leroy Phillips ("Phillips") was the Administrative Supervisor for the afternoon ramp service department. Phillips reported to Lee Ann Bode ("Bode"), who has been the Team Coordinator of Resource Scheduling and Ramp Service since 2000. Her responsibilities included overseeing the ramp service and manpower administrative offices. Bode reported to Jim Kyte ("Kyte"), who was Manager of Planeside Operations. Nick Morocco ("Morocco") was Manager of Ramp Service at O'Hare Airport. He supervised approximately 1200 employees, including lead ramp servicemen. Morocco also reported to Kyte.

## B.    Job Description of a Lead Ramp Serviceman

According to United's official job description, a ramp serviceman:

[p]erforms a variety of operational aircraft service duties as assigned at the ramp, terminal or air freight center. Work may involve specific tasks associated with

2

interim postings or rotation through all work areas to perform a broad range of duties depending on location and service demands. The position requires a combination of physical capabilities and mental capacity. Duties include the pulling, pushing of carts and containers; performs duties in walking, standing, bending, kneeling, and stooping positions; lifts freight, baggage and other heavy items – up to 70 pounds; reading, interpreting and comprehending reference materials, instructions, procedures and policies; effective communication skills.

(Pl.'s Ex. P.) The job functions of a ramp serviceman include: (1) loading, stowing, and unloading mail, cargo and baggage; (2) cleaning and servicing aircraft interiors; (3) removing, assembling, and installing passenger cabin supplies; (4) loading and unloading buffet and food supplies; (5) performing aircraft service duties, such as cleaning windshields and checking engine oil; (6) receiving, positioning, and dispatching aircraft; and (7) operating and cleaning various machines and ramp equipment related to aircraft service such as radios, aircraft air conditioners, cargo and belt loaders, forklifts, trucks, tractors, vans, and other automotive equipment. (*Id.*) A lead ramp serviceman "[p]erforms the same duties as a Ramp Serviceman. Provides work leadership and direction to an assigned crew and may be required to give on-the-job instruction and training." (*Id.*)

Ramp servicemen can be assigned to several different areas at United. One of those areas is the relief area. A lead ramp serviceman assigned to the relief area is sent to the other areas as needed and is expected to be able to perform all of the duties and functions of a ramp serviceman. However, a lead ramp serviceman in certain other areas, such as the product sort area, is required only to lead and give direction.

## C.   United's Decision to Place Biggs on Sick Leave

In June 2001, Kyte informed Bode and Morocco of a telephone call placed to United's business code of conduct line. Kyte explained that another employee had called the business

code of conduct line and complained that Biggs was not performing the job functions of a lead ramp serviceman.[2] Kyte then asked Bode to have Biggs undergo a medical evaluation to determine his ability to perform his job. Biggs was directed to report to United's medical department in order to undergo an Assessment of Functional Capabilities ("AFC").

On June 20, 2001, Biggs was evaluated by United flight surgeon Edward Jennings ("Jennings").[3] Biggs did not have any current medical documentation to submit to Jennings. As part of the evaluation, Jennings asked Biggs to rotate his right arm, which Biggs could not do. That same day, Jennings filled out an AFC form regarding Biggs (the "AFC report"). In the AFC report, Jennings indicated that Biggs had certain long-term functional limitations. Particularly, Jennings concluded that Biggs possessed long-term limitations in the following areas: (1) unlimited lifting, pushing, and/or pulling; (2) full and unrestrictive use of both arms; (3) working with hazardous machinery or above ground level. Additionally, Jennings specified that Biggs could not lift weights greater than ten to twenty pounds and could not climb ladders. In making his determination of Biggs's limitations, Jennings relied upon his examination of

---

[2]Biggs argues that the telephone call constitutes inadmissible hearsay evidence and that it should not be considered because the testimony of Morocco and Bode provide the only evidence that the phone call was received. However, the court finds Biggs's hearsay objection unpersuasive because the telephone call is not being offered for the truth of the matter asserted. Instead, the telephone call evidences Bode's state of mind when she directed Biggs to undergo the medical examination. Additionally, Biggs provides no evidence to contradict the testimony of Bode and Morocco that Kyte informed them that the telephone call was received.

[3]In Biggs's Local Rule 56.1 statement, he disputes the paragraph of United's Local Rule 56.1 statement that provides an account of the AFC. Biggs argues that the facts articulated by United constitute merely Jennings's account of the examination. However, the court finds that Biggs fails to create a genuine issue of material fact as to this evidence because he cites to no material in the record to contradict Jennings's testimony.

Biggs's arm, his discussion with Biggs, and a January 23, 1998 letter written by Biggs's doctor. Jennings did not rely upon any documentation of United's medical department examining Biggs on January 28, 1998 or February 9, 1998 because the file contained no documentation regarding those examinations and Jennings did not know that they had taken place.

Biggs provided a copy of the AFC report to Phillips, the administrative supervisor for Biggs's department. Phillips and Bode reviewed the AFC report, and Bode determined that Biggs's restrictions prohibited him from performing the essential functions of a lead ramp serviceman. Particularly, she determined that the restrictions were inconsistent with the loading and unloading of an aircraft. Phillips testified that the restrictions were inconsistent with the lead ramp service job requirements of (1) lifting at least seventy pounds; (2) being able to climb ladders; (3) using both arms fully and without restriction; and (4) lifting, pushing, and pulling bags, mail, freight, carts, carriers, and containers. Because Biggs worked in the relief area, it was likely that he would be sent to an area requiring him to work on ladders and engage in heavy lifting. Bode told Phillips that Biggs needed to be sent home while they determined if United had work available that Biggs could perform under the restrictions set forth in the AFC report. Phillips informed Biggs of Bode's decision and Biggs was placed on non-occupational sick leave on June 20, 2001.

Under the terms of an agreement between United and the International Association of Machinists and Aerospace Workers, United employees accrue one day of non-occupational sick leave for each month that they work, up to 110 days of accrued leave. A United employee on non-occupational sick leave receives full pay for each day of non-occupational leave that the

5

employee has accrued, and taxes are not taken out of that pay. After the employee returns to work, he resumes accruing non-occupational leave. Biggs remained off work for three weeks. Consequently, he was forced to use three weeks of his accrued non-occupational sick leave, and received full pay while on leave. Since returning to work, Biggs has resumed accruing non-occupational sick days.

**D.**     **United's Decision to Allow Biggs to Return to Work**

Bode and Morocco met to determine whether a position was available for Biggs. They determined that Biggs could fulfill the requirements for two lead positions in the product sort area: (1) the change of itinerary area and (2) the bag room front lead position. Unlike the lead positions in the relief area, the lead positions in the product sort area were consistent with Biggs's restrictions because the leads in the product sort area are required only to lead, direct, and give orders, and not engage in any heavy lifting.

After this decision was made, Biggs was advised that he could return to work. On July 11, 2001, he returned to work and was assigned as a lead in the product sort area. Biggs preferred the product sort lead position because he considered it to be less physically demanding than the relief lead position and he was concerned about being able to continue performing the physical requirements of the relief position. Biggs's move to the product sort area has not affected his rate of pay.

**E.**     **The Current Lawsuit**

On July 2, 2001, Biggs filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). He received notice of his right to sue on August 20, 2001.

6

Biggs filed this lawsuit on September 20, 2001, within the required 90 days of receiving his right to sue letter. Count I of Biggs's two-count complaint alleges that United discriminated against him on the basis of his age, in violation of the ADEA. Count II alleges that United discriminated against him on the basis of the company's perception that he was disabled, in violation of the ADA. The court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 because the case arises under federal statutes. United now moves for summary judgment arguing that (1) Biggs cannot establish a prima facie case that United violated either the ADA or the ADEA and (2) even if Biggs could establish a prima facie case, he cannot prove that United's stated reasons for its employment actions were pretextual. Additionally, United has filed three motions *in limine*.

## II. DISCUSSION

### A.   Motions *in Limine*

As a threshold matter, the court will dispose of United's motions *in limine*. United seeks the following: (1) an order barring Biggs from claiming, arguing, or presenting evidence that he is actually disabled within the meaning of the ADA; (2) exclusion of certain evidence regarding Biggs's medical condition; and (3) an order barring Biggs from presenting evidence regarding or arguing that he is entitled to recover actual damages, emotional distress damages, and/or liquidated damages.

#### 1.   Evidence that Biggs is actually disabled

United seeks an order barring Biggs from presenting evidence, claiming, or arguing that he is actually disabled within the meaning of the ADA. Biggs states that he does not object to

United's motion. Therefore, the court grants as agreed United's motion *in limine* regarding evidence that Biggs is actually disabled.

### 2. Evidence concerning Biggs's medical condition

United seeks the exclusion of evidence regarding Biggs's medical condition not known by United as of June 20, 2001. First, in response to United's argument that only information regarding Biggs's medical condition as of June 20, 2001 is relevant, Biggs argues that the evidence that United seeks to exclude is relevant to the issue of pretext. The court agrees with Biggs because evidence that his health was better than United believed it to be could be probative of whether United honestly believed that he could no longer do his job. Furthermore, the court notes that the evidence is also relevant to the issue of whether Biggs can perform the essential functions of his job. Second, for reasons explained *infra* Sect. II.C., II.D., even if the court considers the July 24, 2001 medical record submitted by Biggs, his claims fail. Therefore, the court need not address United's arguments as to that document. Third, the court finds that the risk of undue prejudice does not outweigh the probative value of this evidence. Therefore, the court denies United's motion *in limine* regarding evidence of Biggs's medical condition not known by United as of June 20, 2001.

### 3. Actual damages, emotional distress damages, and liquidated damages

United seeks an order barring Biggs from arguing or presenting evidence that he is entitled to actual damages, emotional distress damages, or liquidated damages. Because, for reasons stated *infra* Sect. II.C., II.D., the court grants United's motion for summary judgment on both of Biggs's claims, it need not consider what damages Biggs may seek to recover in this

case. Therefore, the court denies as moot United's motion *in limine* regarding actual damages, emotional distress damages, and/or liquidated damages.

## B.    Summary Judgment Standard

Summary judgment is appropriate only where "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1017 (7th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A genuine issue of material fact exists when, viewing the record and drawing all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 325 (noting also that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."). Once the moving party makes a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party must set forth specific facts showing that a genuine issue for trial exists. *Id.* at 324; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). The non-moving party cannot rest on the pleadings alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Selan v. Kiley*,

969 F.2d 560, 564 (7th Cir. 1992). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. United argues that it is entitled to summary judgment as to both Biggs's ADA and his ADEA claims.

## C.    Disability Discrimination

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Because Biggs has provided no direct evidence that United discriminated against him on the basis of his disability, he must proceed under the burden-shifting standard articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 574 (7th Cir. 2001) (stating that the *McDonnell Douglas* analysis applies to ADA claims). Under *McDonnell Douglas*, the plaintiff first has the burden of establishing a prima facie case for disability discrimination. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001). If the plaintiff establishes his prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *Id.* If the

10

defendant satisfies his burden, then the burden shifts back to the plaintiff to show that the defendant's articulated reason was merely pretextual. *Id.*

## 1. Prima facie case

First, Biggs must prove that he can establish a prima facie case for disability discrimination. In order to establish a prima facie case for disparate treatment under the ADA, a plaintiff must prove that: (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) similarly-situated employees received more favorable treatment.[4] *Amadio*, 238 F.3d at 924. United argues that it is entitled to summary judgment because Biggs cannot establish elements one and three of his prima facie case.

### a. Protected class

In order to establish that he belongs to the ADA's protected class, the plaintiff must prove that he is a qualified individual with a disability, within the meaning of 42 U.S.C. § 12111(8). In order to prove that he is a qualified individual with a disability, a plaintiff must prove: (1) a disability; (2) the ability to perform the essential functions of the employment position; and (3) if he is unable to perform the essential functions without accommodation, the existence of a reasonable accommodation that would allow him to perform the position's essential functions. *Amadio*, 238 F.3d at 925. United argues that (1) Biggs cannot prove that he is disabled, within

---

[4]A plaintiff may show discrimination under the ADA in two different ways: by presenting evidence of disparate treatment or by showing a failure to accommodate. *Hoffman*, 256 F.3d at 572. Biggs does not raise a failure to accommodate claim. Therefore, the court need determine only whether Biggs can establish a prima facie case for disparate treatment under the ADA.

the meaning of the ADA and (2) Biggs cannot perform the essential functions of his job, with or without reasonable accommodation. The court will first address whether Biggs can establish that he is disabled.

In order to prove a disability under the ADA, a plaintiff must prove that he (1) suffers from a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. *Krocka v. City of Chicago*, 203 F.3d 507, 512 (7th Cir. 2000) (citing 42 U.S.C. § 12102(2)). In this case, Biggs claims that he is disabled, within the meaning of the ADA, because United regarded him as having an impairment that substantially limited him in one or more of his major life activities.

In order to establish a "regarded as" claim, the plaintiff must prove that the employer entertained misperceptions about the plaintiff. *Krocka*, 203 F.3d at 514 (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). "These misperceptions may take the form of believing 'either that [the plaintiff] has a substantially limiting impairment that [he] does not have or that [he] has a substantially limiting impairment, when, in fact, the impairment is not so limiting." *Krocka*, 203 F.3d at 514 (quoting *Sutton*, 527 U.S. at 489). The parties do not dispute the fact that Biggs suffers from paralysis of his hand. The parties disagree, however, as to the extent that Biggs's injury limits his ability to work.

Under the *McDonnell Douglas* analysis, Biggs, as the plaintiff, has the burden of establishing his prima facie case. *Hoffman*, 256 F.3d at 572. Additionally, the Seventh Circuit has emphasized that an ADA plaintiff must articulate which of his major life activities has been

substantially limited. *Amadio*, 238 F.3d at 925 (citing *Bragdon v. Abbott*, 524 U.S. 624, 637-38 (1998)). Biggs has not indicated in which major life activity United regarded him to be substantially limited. Therefore, Biggs has failed to meet his burden of proving his prima facie case.

The court notes, however, that both parties raise arguments and cite cases that deal with the major life activity of working. Even if, however, Biggs had met his burden of indicating that United regarded him to be substantially limited in the major life activity of working, his claim would still fail. In order to prove that the defendant regarded the plaintiff substantially impaired in the major life activity of working, the plaintiff must prove that the defendant regarded him as substantially limited in his ability to perform a class of jobs or a broad range of jobs. *Murphy v. United Parcel Serv.*, 527 U.S. 516, 523 (1999) (citing 29 C.F.R. § 1630.2(j)(3)(i)). It is not enough for the plaintiff to prove that he was substantially limited only in his ability to perform a particular job or a limited aspect of his job. *Sutton*, 527 U.S. at 491 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). A plaintiff is not precluded from a broad range of jobs when a variety of different types of jobs are available. *Sutton*, 527 U.S. at 492. Biggs argues that the fact that United required him to undergo the AFC evidences the fact that United regarded him as disabled.

The Seventh Circuit has stated, "steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof in a case such as this one that the employer regarded the employee as disabled." *Krocka*, 203 F.3d at 515. However, the results of that evaluation may "provide some evidence that the employer regarded the employee as disabled." *Id.* In this case, United

had Biggs undergo the AFC because the telephone call placed to the code of conduct line gave rise to a question of whether he could continue working as a lead ramp serviceman in relief. The court finds that United had a legitimate concern about Biggs's ability to perform in his position. Therefore, the fact that United had Biggs undergo an AFC does not provide evidence that United regarded Biggs as disabled. However, the court must determine whether the results of the AFC led United to regard Biggs as disabled.

After receiving the results of the AFC, Bode determined that Biggs could not continue working as lead ramp serviceman in relief, and had him placed on leave until a decision could be reached as to whether a position was available for Biggs that was consistent with the restrictions placed upon him by the AFC report. Bode determined that Biggs could not continue working as lead ramp serviceman in relief because that position required him to be able to work in any of the ramp service areas. Consequently, it was possible that Biggs would be required to engage in heavy lifting and climb ladders, which would be inconsistent with the restrictions set forth in the AFC report. Therefore, although Bode decided that Biggs could no longer work as the lead ramp serviceman in relief, which was a position that required Biggs to be able to perform in all of the ramp service areas, Bode made that decision based upon a determination that Biggs could not work in any ramp service area in which he would be required to engage in heavy lifting and climb ladders. Bode's decision did not rest upon a determination that Biggs could not work as a lead ramp serviceman in any area, instead, it rested upon a determination that he could not work in a few areas. Therefore, the court finds that the determination that Biggs could not work as lead ramp serviceman in relief and needed to be placed on leave, pending a

decision about other positions that might be available for him was a determination only that Biggs could not perform particular ramp service jobs and that it was not a determination that Biggs could not work in any capacity as a lead ramp serviceman. Furthermore, Bode subsequently identified two lead ramp serviceman positions in the product sort area that were consistent with Biggs's restrictions and Biggs returned to work in one of those positions. *See Graham v. Interstate Brands Corp.*, No. 00 C 4989, 2002 WL 1632283, at *8 (N.D. Ill. July 23, 2002) (finding that employer demonstrated its perception that plaintiff could continue to work by offering him another position). Therefore, the results of the AFC did not lead United to regard Biggs as disabled.

The court finds that Biggs cannot establish that United regarded him as substantially limited in the major life activity of working. Consequently, the court concludes that Biggs cannot establish that he was disabled, within the meaning of the ADA, and that, therefore, he cannot prove that he falls within the class of individuals protected by the ADA. The court need not determine whether Biggs could perform the essential functions of his job, with or without reasonable accommodation. Therefore, the court finds that Biggs cannot establish a prima facie case for disability discrimination and that United is entitled to summary judgment on Biggs's ADA claim.

### b. Satisfactory job performance

Neither party directly addresses whether Biggs was performing his job satisfactorily. However, the undisputed evidence establishes that Biggs was meeting United's expectations. This evidence includes Biggs's own testimony, as well as the testimony of Phillips and Morocco

that Biggs had worked for three years as lead ramp serviceman in the relief area without any deficiency in his performance or any complaint regarding his performance. Therefore, the court finds that Biggs has met his burden as to this element of his prima facie case. Regardless, because the court has already concluded *supra* Sect. II.C.1.a. that Biggs cannot establish that he is within the class of individuals protected by the ADA, the court finds that Biggs cannot establish a prima facie case for disability discrimination. Therefore, the court grants United's motion for summary judgment as to Biggs's ADA claim.

### c. Adverse employment action

United argues that Biggs cannot establish that he suffered an adverse employment action because (1) he received full pay when on sick leave; (2) his take home pay was greater while he was on leave because his pay was not subject to taxation; (3) he returned to work with the same job title; and (4) he has accrued additional sick time since returning to work and will ultimately "rebank" all the days that he used while on leave. Biggs argues in response that he suffered an adverse employment action because he was forced to use sick days while he was on leave and because he was not informed initially how long he would be on leave.

An adverse employment action must materially alter the terms and conditions of employment. *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). A material loss of employment benefits can constitute a materially adverse change in the terms and conditions of employment. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

In this case, United placing Biggs on sick leave forced him to use sick days that he had accrued, in order to receive full pay during the leave. When Biggs returned to work, United did

not restore the days that he had expended during his leave. Instead, Biggs has had to re-accrue those fifteen days since returning to work.[5] Whether Biggs's loss of these sick days constitutes an adverse employment action is a close call. However, because United's actions permanently deprived Biggs of fifteen days of sick time – regardless of whether Biggs later accrued additional sick days – the court concludes that Biggs has suffered a material loss of employment benefits. Therefore, the court finds that Biggs has met his burden of proving that he suffered an adverse employment action.

Regardless, because the court has already concluded *supra* Sect. II.C.1.a. that Biggs cannot establish that he is within the class of individuals protected by the ADA, the court finds that Biggs cannot establish a prima facie case for disability discrimination. Therefore, the court grants United's motion for summary judgment as to Biggs's ADA claim.

### d. Similarly-situated employees

Biggs offers no evidence that United treated any other employee who was similarly-situated to him, but who United did not regard as being disabled, differently than it treated Biggs. Consequently, the court finds that Biggs has failed to meet his burden as to this element of his prima facie case.

---

[5]United, in its reply brief argues that Biggs's loss of fifteen sick days was not a material loss of benefits because Biggs had accrued the maximum 110 non-occupational sick days and he would reach the maximum number of accrued days again. (Def.'s Reply Mem. in Supp. Mot. for Summ. J. at 6.) However, that argument is not based upon facts in the parties' Local Rule 56.1 statements. Therefore, there is no evidence in support of those statements that is properly within the court's consideration of this motion. Even if the court considered those facts, however, they would be unpersuasive because United did not restore the sick days that Biggs was forced to use.

Biggs does, however, assert that one other ramp serviceman with a partially amputated arm was a similarly-situated employee, for purposes of his age discrimination claim. Therefore, the court will review whether evidence of that other ramp serviceman could satisfy Biggs's burden on this element of his ADA claim.

In determining whether two employees are similarly-situated, a court must look at all relevant factors, and the factors that are relevant depend upon the context of the case. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). The plaintiff "need not show complete identity in comparing himself to the other employee, but he must show substantial similarity." *Id.* at 618. Relevant factors usually include "conduct, qualifications, job performance, and standards for measuring performance." *Id.* at 617.

Biggs contends that another United ramp serviceman who does not have full use of both arms was allowed to keep his job, whereas Biggs was forced to go on leave and change positions because he was not able to use both of his arms. In order to determine whether this other serviceman is, in fact, similarly-situated to Biggs, the court must consider a number of factors. Factors relevant to this determination are: (1) the age of the other ramp serviceman; (2) the nature of the injury to his arm and the degree to which that injury restricts his use of his arm; (3) whether he has been subjected to an AFC; (4) whether any restrictions have been placed upon him by United's medical department; (5) the area in which he works; (6) his job responsibilities; and (7) whether he has a lead position. *See Gallentine v. Sterling Farm & Fleet*, No. 99 C 50206, 2001 U.S. Dist. LEXIS 8456, at *6 (N.D. Ill. June 15, 2001) (not cited on Westlaw) (finding that plaintiff bringing discrimination claim failed to establish a prima facie case where she failed to identify another employee with comparable physical restrictions).

Biggs's evidence in support of his argument establishes the following facts. The other ramp serviceman is estimated to be in his mid-thirties, and one of his arms has been partially amputated. However, Biggs provides no evidence of any functional limitations imposed upon the other ramp serviceman, due to the partial amputation of his arm. Nor does Biggs indicate whether United's medical department – or any other medical professional – has placed restrictions upon the other ramp serviceman. Finally, Biggs submits no evidence of what area the other ramp serviceman works in or what his job duties and responsibilities are. In sum, Biggs's evidence establishes only that both he and the other ramp serviceman have suffered arm injuries. Therefore, Biggs's evidence cannot support a conclusion that the other ramp serviceman is a similarly-situated employee. Even Biggs could establish that the other ramp serviceman was a similarly-situated employee, he offers no evidence and makes no argument that the alleged difference in treatment was based upon United regarding him as disabled.

The court finds that Biggs has failed to establish that a similarly-situated employee was treated more favorably. Therefore, Biggs has not met his burden of proving a prima facie case for disability discrimination. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (finding that ADA plaintiff failed to prove a prima facie case where he did not identify a similarly-situated employee). Accordingly, the court grants United's motion for summary judgment as to Biggs's ADA claim.

**2.    Articulated reasons**

If Biggs could establish a prima facie case for disability discrimination, the burden under *McDonnell Douglas* would shift to United to articulate legitimate non-discriminatory reasons

for taking the alleged adverse action against Biggs. *Amadio*, 238 F.3d at 924. In this case, United has stated that it placed Biggs on sick leave, thus causing him to use fifteen days of accrued leave, because the AFC report placed Biggs under certain restrictions that were inconsistent with the requirements for working as a lead ramp serviceman in relief and Biggs needed to be placed on leave until United could determine whether he could return to work as a lead ramp serviceman. Therefore, the court concludes that United has met its burden under *McDonnell Douglas*.

### 3.    Pretext

Because United has met its burden of articulating legitimate, non-discriminatory reasons for placing Biggs on leave, the burden shifts back to Biggs, and he must prove that United's stated reasons were pretextual.

In order to prove pretext, a plaintiff must do more than merely show that the business decision was erroneous. *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002). Instead, the plaintiff must prove that the defendant's explanation was dishonest. *Id.* In order to establish pretext, a plaintiff must demonstrate that the defendant's articulated reasons for the employment action either (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) were insufficient to motivate the adverse action. *Id.* Thus, the relevant inquiry in determining whether Biggs can prove pretext is whether Bode, who made the decision to place Biggs on leave, honestly believed the reasons behind her decision. *See Franzoni v. Hartmarx Corp.*, --- F.3d ---, No. 01-2853, 2002 WL 1808333, at *3 (7th Cir. Aug. 8, 2002) (stating that the relevant inquiry in determining whether an employer's stated reasons were pretextual is whether the

decision-maker honestly believed the reasons behind his decision). Biggs argues only that United's stated reasons have no basis in fact, and does not argue that the medical determination was insufficient to justify placing him on leave for three weeks.

Biggs's argument that Bode's stated reasons were pretextual focuses upon the accuracy of United's assessment of his health. First, Biggs points to the fact that United deemed him fit to return to work in 1998, following his stroke, and that he worked as a lead ramp serviceman for over three years. Second, Biggs argues that the June 2001 AFC, conducted by Jennings, was superficial because it was based, in part, upon his medical file, which, according to Biggs, was incomplete.

Bode made her decision to place Biggs on leave after the following chain of events. Bode was informed of the telephone call to United's business code of conduct line that complained of Biggs's performance. Based upon that information, and at the direction of Kyte, Bode had Phillips direct Biggs to undergo the AFC. Bode reviewed the AFC report, which indicated that Biggs possessed long-term restrictions with regards to: (1) his ability to lift, push, and pull; (2) his use both of his arms; and (3) his ability to drive, work with hazardous machinery, or work above ground level. Particularly, the AFC report prohibited Biggs from lifting weights greater than ten to twenty pounds and from climbing ladders. Bode determined that Biggs could no longer work as the lead ramp serviceman in relief – where he could be required to engage in heavy lifting or to climb ladders – and had him placed on leave. Therefore, Biggs must prove that Bode did not honestly believe that the restrictions placed upon him by the AFC were incompatible with him continuing to perform the essential functions of a lead ramp serviceman in the relief area.

Biggs's arguments fail to demonstrate that Bode's reason for placing him on leave was pretextual. Regardless of whether Biggs was able to work for three years as a lead ramp serviceman in relief, once United received the telephone call complaining of his performance, the company had reason to evaluate Biggs's physical condition. Furthermore, Biggs provides no evidence that Bode was aware of his performance over those three years or of any shortcomings regarding the AFC report or Jennings's evaluation of Biggs. Because Biggs provides no evidence that calls into question the honesty of Bode's decision, the court concludes that Biggs cannot establish pretext. Therefore, the court grants United's motion for summary judgment on Biggs's ADA claim.

Because Biggs can establish neither a prima facie case for disability discrimination nor that United's articulated reasons were pretextual, the court concludes that Biggs's has failed to provide the court with indirect evidence to support a disparate treatment claim under the ADA. As to Biggs's ADA claim, the court finds that there is no genuine issue of material fact and that United is entitled to judgment as a matter of law. Therefore, the court grants United's motion for summary judgment on Biggs's ADA claim.

## D. Age Discrimination

The ADEA prohibits employers from discriminating against their employees on the basis of age. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714 (7th Cir. 1999) (citing 29 U.S.C. § 623(a)). A plaintiff in an employment discrimination case may prove discrimination by using either direct evidence or indirect evidence. *Franzoni*, --- F.3d ---, 2002 WL 1808333, at *3.

In a discrimination case, direct evidence is evidence which, if believed by the trier of fact, will prove discrimination without reliance upon inference or presumption. *Pitasi*, 184 F.3d at 714. Direct evidence must relate not only to the issue of discriminatory intent, but also to the specific employment decision in question. *Id.*

Biggs does not argue that he has direct evidence of age discrimination, and his only evidence that could arguably constitute direct evidence was a comment that Biggs testified Phillips made during their June 2001 meeting, just before Phillips informed Biggs that he was being placed on leave. Biggs testified that at that meeting, Phillips told him that he should think about retiring.[6] Phillips denies making that comment, but, even if he did, it would not constitute direct evidence of age discrimination because the Seventh Circuit has noted that suggestions that an employee retire are not necessarily a reference to the employee's age. *Halloway*, 180 F.3d at 825. United has provided evidence to support its position that the decision to place Biggs on non-occupational sick leave was based upon Biggs's health, as described in the AFC report. Therefore, if Phillips told Biggs that he should think about retiring, it took place during a conversation regarding Biggs's health, not his age. Consequently, the court concludes that Biggs has failed to show that Phillips's potentially age-based comment related in any way to the decision to place Biggs on sick leave. *See Pitasi*, 184 F.3d at 714 (holding that direct evidence must relate to the specific employment decision in question).

---

[6]Additionally, Biggs testified that other co-workers made comments to him that he was too old to work. However, those employees did not make the decision that Biggs should undergo the AFC or that he should be placed on leave. Therefore, those comments cannot constitute direct evidence of discriminatory intent. *See Halloway v. Milwaukee County*, 180 F.3d 820, 825 (7th Cir. 1999) (holding that remarks made by someone other than the decision-maker could not constitute direct evidence for ADEA claim).

Because Biggs has no direct evidence of age discrimination, he must proceed on his ADEA claim by providing the court with indirect evidence that United discriminated against him due to his age. *See Beatty v. Wood*, 204 F.3d 713, 716 (7th Cir. 2000) (stating that where ADEA plaintiff could not succeed through direct evidence, he must proceed through the indirect method of proof). Therefore, Biggs must proceed under the *McDonnell Douglas* burden-shifting method, already explained *supra* Sect. II.C. *See Pitasi*, 184 F.3d at 715-16 (applying the *McDonnell Douglas* analysis to an ADEA case).

Under the *McDonnell Douglas* method of proof, the employee must first present a prima facie case of age discrimination. *Id.* at 716. To establish a prima facie case for age discrimination, a plaintiff must prove: (1) he was forty years old; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly-situated, substantially younger employees were treated more favorably. *Pitasi*, 184 F.3d at 716. United argues that it is entitled to summary judgment on Biggs's age discrimination claim because Biggs cannot prove elements three and four of his prima facie case.

The court has already found *supra* Sect. II.C.1.b. that Biggs has established that he was performing his job satisfactorily and, *supra* Sect. II.C.1.c. that he has established that he suffered an adverse employment action in this case. However, the court also determined *supra* Sect. II.C.1.d. that Biggs had failed to provide evidence of any United employee that was similarly-situated to Biggs. Therefore, the court concludes that Biggs cannot establish a prima facie case for age discrimination. Accordingly, the court grants United's motion for summary judgment as to Biggs's ADEA claim.

If Biggs could meet his burden of proving a prima facie case for discrimination under the ADEA, the burden would then shift to United to articulate legitimate, non-discriminatory reasons for placing Biggs on leave and forcing him to use accrued sick time. *Pitasi*, 184 F.3d at 716. As the court has already explained *supra* Sect. II.C.2., United has met its burden by stating that it decided to remove Biggs from his position as lead ramp serviceman in relief because the requirements of that position were incompatible with the restrictions placed upon Biggs in the AFC report.

Therefore, the burden shifts back to Biggs, and he must prove that United's stated reasons were pretextual. *Id.* However, for reasons already discussed *supra* Sect. II.C.3., the court concludes that Biggs cannot satisfy his burden of establishing pretext. Therefore, the court finds that United is entitled to summary judgment on Biggs's ADEA claim. *Id.* at 718 (holding that district court's grant of summary judgment on ADEA claim was proper where plaintiff could not establish pretext).

Because Biggs can establish neither a prima facie case for age discrimination or that United's articulated reasons were pretextual, the court concludes that Biggs has failed to provide the court with indirect evidence that United discriminated against him, in violation of the ADEA. Therefore, as to Biggs's age discrimination claim, the court concludes that there is no genuine issue of material fact and that United is entitled to judgment as a matter of law. Accordingly, the court grants United's motion for summary judgment on Biggs's ADEA claim.

### III. **CONCLUSION**

For the foregoing reasons, the court: (1) grants in part and denies in part United's motions *in limine* and (2) grants United's motion for summary judgment on all counts. Final judgment in this case is entered in favor of defendant United Airlines, Inc. and against plaintiff Lonnie Biggs.

Date: **AUG 2 2 2002**

James H. Alesia
United States District Judge

26